UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALLY GALEA,<br><br>    Plaintiff,<br><br>  v.<br><br>WELLS FARGO BANK, N.A., EQUIFAX INFORMATION SERVICES LLC, and EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>    Defendants. | No. 2:19-cv-00386-JAM-AC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART EQUIFAX'S MOTION TO DISMISS** |

In March 2019, Sally Galea filed a complaint against Wells Fargo Bank, N.A., Equifax Information Services, and Experian Information, alleging violations of the Fair Credit Reporting Act ("FCRA") and the California Consumer Reporting Agencies Act ("CCRAA"). Compl., ECF No. 1. She filed an amended complaint seven weeks later. First Am. Compl. ("FAC"), ECF No. 11. Since then, Galea has entered into settlement agreements with Wells Fargo, ECF No. No. 13, and Experian, ECF No. 24. Equifax, the remaining defendant, filed a motion to dismiss under Rule 12(b)(6). Mot. Dismiss ("Mot."), ECF No. 20.[1] For the reasons

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for July 16, 2019.

1

discussed below, the Court GRANTS in part and DENIES in part Equifax's motion.

## I. FACTUAL ALLEGATIONS

Galea filed for Chapter 13 bankruptcy in September 2012. FAC ¶ 39. Over the next five years, she made all the payments required under her bankruptcy plan. FAC ¶¶ 42-49. In November 2017, the Bankruptcy Noticing Center notified her that she had completed her plan. FAC ¶ 49. In January 2018, her bankruptcy was discharged. FAC ¶ 50. Galea contends an Equifax credit report issued eight months later did not reflect this successful discharge of bankruptcy. FAC ¶¶ 110-11.

Galea alleges the Consumer Data Industry Association's Metro 2 format "is the credit industry's standardized, objective reporting format used by furnishers to provide information about consumer accounts to consumer reporting agencies." FAC ¶ 52. The Metro 2 format provides guidance on how furnishers of consumer information should report consumer accounts once the consumer has paid out the account through a successfully-discharged bankruptcy. See FAC ¶ 57. For unsecured accounts, the report should list the CII status as "Discharged/Completed through BK Chapter 13." Id. The Current Balance, Scheduled Monthly Payment Amount, and Amount Past Due should all be listed as "Zero" or "$0". Id. For secured accounts, the Metro 2 likewise requires furnishers to update the account's Status, Payment History, Current Balance, Scheduled Monthly Payment Amount, and Amount Past Due. FAC ¶ 58. Yet, following Galea's successful discharge of bankruptcy, Equifax issued a credit

report in September 2018 that listed her Scheduled Payment Amount as $410. FAC ¶ 110.

A month later, Plaintiff sent a letter to Equifax, disputing the September 2018 report. FAC ¶¶ 115-16. In December 2018, Equifax provided Galea with the results of its reinvestigation. FAC ¶ 119. It did not, however, change the Scheduled Payment Amount from $410 to $0. FAC ¶ 120.

## II. OPINION

### A. Fair Credit Reporting Act Claims

#### 1. 15 U.S.C. §§ 1681e(b) and 1681i(a)

The FCRA "creates a private right of action for willful or negligent noncompliance with its requirements." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009). See also 15 U.S.C. §§ 1681n and 1681o. Galea claims Equifax violated Sections 1681e(b) and 1681i(a) of this statute. FAC ¶¶ 73, 124-25. Section 1681e(b) requires a consumer reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" included in a consumer report. 15 U.S.C. § 1681e(b). If a consumer disputes "the completeness or accuracy of any item of information contained in [her] file," Section 1681i(a) requires the consumer reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a). Stating a prima facie claim under either provision requires a plaintiff to allege information in her credit report was inaccurate. Shaw v. Experian Information Solutions, Inc., 891 F.3d 749, 756 (9th Cir. 2018). Equifax argues the Court

must dismiss Galea's Section 1681e(b) and Section 1681i(a) claims because she failed to satisfy this prerequisite. Mot. at 4-9.

The FCRA imposes distinct requirements upon consumer reporting agencies ("CRA's") and those who furnish information to consumer reporting agencies ("furnishers"). Reply at 1-2, ECF No. 33. Even so, courts rely on the same standard for determining whether a credit report included "inaccurate" information regardless of which entity a plaintiff sues. See, e.g., Shaw, 891 F.3d at 756; Gorman v. Wolpoff & Ambramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009). For the purposes of the FCRA, information is "inaccurate" when "it either is patently incorrect or is misleading in such a way and to such an extent that it can be expected to adversely affect a credit decision." Shaw, 891 F.3d at 756. Plaintiffs who contend information in their consumer report is misleading must claim more than imprecision—"imprecision alone does not render a CRA's conduct actionable." Id. at 757. But information that paints an "inconsistent" or "incomplete" picture of a plaintiff's credit may suffice. Gorman, 584 F.3d at 1162-63; cf. Huizar v. Wells Fargo Bank, N.A., 257 F. Supp. 3d 1103, 1108 (E.D. Cal. 2017).

Equifax argues that listing the Scheduled Payment Amount as $410 is neither patently incorrect nor materially misleading. Mot. at 4-5. The Equifax consumer report lists Galea's Travis Credit Union Account as "Paid and Closed," "Closed or Paid Account/Zero Balance." Exh. 3, ECF No. 20-4. The "Date of Last Activity" and "Date Closed" are both listed as "04/2012." Id. The "Balance Amount" and "Amount Past Due" are listed as "$0."

4

Id. Within this context, Equifax argues the Scheduled Payment Amount merely reflects a "historical payment term" or "historical scheduled payment amount." Mot. at 1, 4-5. Galea does not dispute that, at one point, she made monthly payments of $410 on her Travis Credit Union account. Mot. at 4.

Neither the Ninth Circuit nor this Court have ruled on the question of whether it is inaccurate to include a "scheduled monthly payment amount" on an account that is otherwise paid off and closed. Defendants argue other courts have "readily and consistently" found consumer reporting agencies may include accurate, historical information on consumer reports—even if that information is derogatory. Reply at 3; see also Mot. at 6-9 (citing Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1158-59 (11th Cir. 1991); Meeks v. Equifax Information, Serv's, LLC, No. 1:18-cv-03666-TWT-WEJ, 2019 WL 1856411, at *5 (N.D. Ga. Mar. 4, 2019); Harris v. Nissan-Infiniti LT, No. 2:17-cv-00191-JCM-VCF, 2018 WL 2741040, at *1 (D. Nev. June 7, 2018); Blanch v. Trans Union, LLC, 333 F. Supp. 3d 789, 793 (M.D. Tenn. 2018)). The Court finds Equifax's collection of authority is both overinclusive and incomplete, including some cases that are clearly distinct from the one at hand, and excluding others that undermine its claims of a judicial consensus.

For example, in Cahlin, 936 F.2d at 1154, a plaintiff defaulted on a lease with General Motors. Following the default, the plaintiff's credit report included an "I9" rating on his General Motors account, indicating the account had been "charged off" or was a bad debt. Id. at 1154-55. The plaintiff eventually settled the account. Id. at 1155. The account

retained its I9 rating but showed a balance of zero. Id. at 1159. Plaintiff sued, arguing it was incorrect for the credit reporting agency to continue reporting his charge off after he settled the account. Id. at 1155. The Eleventh Circuit disagreed, finding there was nothing incorrect about including derogatory references on a credit report to reflect an account had been charged and settled for less than the original amount. Id. at 1158.

Cahlin, however, is not persuasive authority for this case. Unlike the plaintiff in Cahlin, Galea does not contend her credit report should be without any derogatory references that may accurately reflect her credit history. Indeed, Galea's challenge is not with the inclusion of historical information, but rather, the absence of any clear indication that her "scheduled monthly payment amount" is, in fact, historical. See Opp'n at 6-7. Furthermore, the plaintiff in Cahlin, 936 F.2d at 1158 only argued that his report was patently incorrect. Because he did not argue the report was misleading, the court never addressed that issue. Id.

Meeks, 2019 WL 1856411, at *5 is Equifax's closest analog. There, the disputed credit report listed the "Terms" of the plaintiff's debt ("$613 per month, paid Monthly for 76 months") even though plaintiff had charged off the debt and closed the account. Id. Upon viewing the tradeline as a whole, the Northern District of Georgia found the report "undeniabl[y]" showed "that there exist[ed] no ongoing obligation for payment." Id. at 6. Because the account was "clearly reported as closed, charged off, . . . and with a $0 balance", the "mere presence of

historical monthly payment terms neither cause[d] confusion nor create[d] an inaccuracy." Id. Similarly, in Harris v. Nissan-Infiniti LT, No. 2:17-cv-00191-JCM-VCF, 2018 WL 2741040, at *4 (D. Nev. 2018), the District of Nevada found that including a balloon payment term on an account discharged through bankruptcy was not materially misleading where the phrase "[d]ischarged through bankruptcy chapter 7" preceded the disputed payment amount. Harris v. Nissan-Infiniti LT, 2018 WL 2741040, at *1, 4.

But Galea cites an equally comparable case arising out of the Northern District of Illinois. Opp'n at 7 (citing Freedom v. Citifinancial, LLC, No. 15-cv-10135, 2016 WL 406510 (N.D. Ill. July 25, 2016)). In Freedom, 2016 WL 407510, at *6, the plaintiff's credit report listed a "scheduled payment" of $143 even though he'd successfully discharged his debt through bankruptcy. The Court found that reporting a "scheduled payment amount," even if historically accurate, "could create the mistaken impression that Plaintiff still owed on the account." Id. If anything, Freedom is more similar to the case at hand than Meeks. The Freedom, 2016 WL 407510, at *6 credit report, like the one here, labeled its "historical payment" category "Scheduled Payment Amount"—a phrasing that more intuitively suggests an ongoing payment obligation than the word "Terms." See Meeks, 2019 WL 1856411, at *5.

The Court is not bound by any of these cases cited in Equifax's motion. Nor is it persuaded that those cases require this Court to dismiss Galea's Section 1681e(b) and Section 1681i(a) claims. Rather, the inconsistency among district

7

courts on this issue—and the narrow grounds upon which they attempt to distinguish themselves—reaffirms the notion that determining whether credit information is misleading is often a task better suited for a jury. See, e.g., Drew v. Equifax Information Services, LLC, 690 F.3d 1100, 1108 (9th Cir. 2012); Gorman, 584 F.3d at 1163; Morgan v. Equifax Information Services, LLC, No. 15-cv-10640, 2017 WL 1150848, at *3 (N.D. Ill. March 28, 2017).

Furthermore, the Court rejects Equifax's argument that Galea's Section 1681e(b) and Section 1681i(a) claims rest on nothing more than her subjective belief of what is misleading. Independent of whether a jury would find the report misleading, Galea's complaint plainly sets out an objective basis for her claim. Galea alleges that, under the Metro 2 format, "[o]nce the [bankruptcy] Plan is successfully completed, furnishers for unsecured accounts are instructed to report the . . . Scheduled Monthly Payment Amount . . . as Zero." FAC ¶ 57 (internal quotations omitted). Secured accounts should, likewise, be updated. FAC ¶ 58. Galea's credit report did not list her Scheduled Payment Amount as zero following the successful completion of her bankruptcy plan. FAC ¶¶ 50, 110. Assuming the truth of Galea's allegations (as this Court must for purposes of this Motion), the Metro 2 provides an objective basis for her claim that the Equifax report was incorrect or misleading. See FAC ¶¶ 34-36.

Equifax failed to show, as a matter of law, that Galea did not allege inaccuracies in her September 2018 credit report. The Court denies Equifax's motion to dismiss Galea's Section

1681e(b) and 1681i(a) claims on this ground.

    2. 15 U.S.C. § 1681i(b)

 Under Section 1681i(b), a consumer may file a brief statement of dispute if the reinvestigation requested under Section 1681i(a) did not resolve the issue. As Equifax argues, Galea does not allege Equifax prevented her from filing a statement of dispute following its reinvestigation. Mot. at 11. Indeed, Equifax's results letter expressly invited Galea to "add a statement of up to 100 words" to her credit file. Id. (citing Exh. 3 at 2). The Court interprets Galea's failure to oppose this argument as acquiescence of its merit. See Bird v. Berryhill, No. 1:16-cv-00755-SKO, 2017 WL 6594612, at *3 (E.D. Cal. Dec. 26, 2016). The Court grants Equifax's motion, dismissing Galea's Section 1681i(b) claim without prejudice.

  B. California Consumer Reporting Agencies Act Claims

 Both parties concede Sections 1785.16 and 1785.14 under the CCRAA are substantially identical to Sections 1681i and 1681e under the FCRA. Mot. at 3-4; Opp'n at 4. A plaintiff must show information in her credit report is inaccurate to state a claim under Section 1785.16 or Section 1785.14. Carvalho, 629 F.3d at 889-90. Furthermore, "inaccuracy" under these provisions is governed by the "patently incorrect or materially misleading" standard used for FCRA claims. Id. at 890-91. Defendants do not advance any reasons why the Court should dismiss Galea's CCRAA claims beyond those it argued for dismissal of her corresponding FCRA claims. So, for the reasons discussed above, supra at 3-8, the Court denies Equifax's motion to dismiss Galea's Section 1785.16 and Section 1785.14 claims under the

1 | CCRAA.

2 | C. <u>Willfulness Claims</u>

Finally, Equifax argues Galea failed to allege that any of the alleged violations of the FCRA and CCRAA were willful. Mot. at 12-13. The Court agrees. The "willfulness" requirement under the FCRA covers both known and reckless violations, <u>Robbins v. CitiMortgage, Inc.</u>, No. 2017 WL 6513662, at *19 (N.D. Cal. Dec. 20, 2017), and Galea has not adequately alleged either. In her complaint, she maintains "the Credit Bureaus' employees have a policy of simply parroting whatever information is provided by furnishers rather than conducting a reasonable investigation." FAC ¶ 70. These reinvestigations, she argues, "occur in a hurried, conveyor-belt styled atmosphere in which dispute operators are under pressure to process disputes quickly to meet production quotas" – a process that results in "a speed-minded dispute operator failing to consider . . . information that is relevant to the consumer's dispute." FAC ¶ 71. Conclusory statements such as these are not entitled to the presumption of truth generally afforded to a plaintiff's allegations at this stage. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009). Nor are they enough to "unlock the doors of discovery" for otherwise unsupported claims. <u>Id.</u> The Court grants Equifax's motion, dismissing Galea's willfulness claims without prejudice.

D. <u>Sanctions</u>

The Court issued its Order re Filing Requirements ("Order") on March 5, 2019. ECF No. 3-2. The Order limits memoranda in support of and in opposition to motions to dismiss to fifteen

pages and reply memoranda in support of motions to dismiss to five pages. Id. at 1. The Order also states that an attorney who exceeds the page limits must pay monetary sanctions of $50.00 per page and that the Court will not consider any arguments made past the page limit. Equifax's reply memorandum exceeds the page limit by five pages. The Court has not considered any arguments made after page five of the reply brief.

### III. ORDER

For the reasons set forth above, the Court GRANTS in part and DENIES in part Equifax's motion to dismiss. Galea's Section 1681i(b) claim and willfulness claim are dismissed WITHOUT PREJUDICE. If Galea elects to amend her complaint with respect to either of these claims, she shall file a Second Amended Complaint within twenty days of this Order. Defendants' responsive pleading is due twenty days thereafter.

Additionally, the Court ORDERS Equifax's counsel to pay $250.00 in sanctions. Sanctions shall be paid to the Clerk of the Court within five (5) days of the date of this Order.

IT IS SO ORDERED.

Dated: August 1, 2019

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE